**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND**
Baltimore Division

| | | |
|---|---|---|
| IN RE: | ) | |
| PARVIS NAFFIS AND VICKY NAFFIS | ) | Chapter 7 |
|     Debtor | ) | Case No.: **14-28711** |
| | ) | |
| | ) | |
| PARVIS NAFFIS | ) | |
|     **Plaintiff** | ) | |
| | ) | |
| Vs. | ) | Adversary Case No.: **15-00078** |
| | ) | |
| | ) | |
| XEROX EDUCATION SERVICES, | ) | |
| *et al* | ) | |
| | ) | |
|     **Defendant** | ) | |

**PLAINTIFF'S PROPOSED FINDINGS OF DISPUTED FACTS,
PROPOSED CONCLUSIONS OF LAW**

Plaintiff, by and through undersigned counsel, files these Proposed Findings of Disputed Facts and Conclusions of Law.

A. **Proposed Findings of Facts**[1]

1. Plaintiff, Parvis Naffis, filed a voluntary petition under Title 7 of the Bankruptcy Code.

2. Defendant Xerox Education Services ("Xerox"), formally known as, Affiliated Computer Services Inc. ("ACS"), is a federally authorized student loan servicer, who serviced Plaintiff's student loan debt. Xerox and ACS, collected on Plaintiff's student loans and reported same to the credit reporting agencies.

---

[1] Plaintiff's disputes each and every fact alleged by the Defendant

1

3. At the time of the filing of the Bankruptcy, Plaintiff listed ACS/efsfin, as a Creditor, based on the information listed on his credit report. Moreover, Plaintiff listed the U.S. Department of Education, Defendants employer.

4. Plaintiff subsequently, on February 19, 2015, filed an Adversary Proceeding to determine the dischargeability of a student loan debt which is the subject of his Complaint.

5. On March 18, 2015, Plaintiff served a copy of the summons and complaint on the Defendant.

6. On April 30, 2015, Plaintiff filed a request for default. Plaintiff served the notice of default on the General Counsel for the Defendant at 45 Glover Avenue, Norwalk, CT 06856.

7. On May 5, 2015, the Clerk of the Court issued Default against the Defendant.

8. On May 7, 2015, a copy of the notice was mailed to the Defendant, via its agent for service CSC Corporation and as of this writing, has not been returned.

9. On May 8, 2015, Plaintiff filed a Motion for Default Judgement. Plaintiff served the Motion on the General Counsel for Defendant at 45 Glover Avenue, Norwalk, CT 06856.

10. On June 25, 2015, this Court denied Plaintiff's Motion.

11. On June 27, 2015, a copy of the denial was mailed by the Court to Defendant's agent for service CSC Corporation and as of this writing, has not been returned.

12. On November 10, 2015, this court issued an instruction on Plaintiff's Motion for Hearing on Damages. A copy of the Court's instruction was mailed to the Defendant's agent for service CSC Corporation on November 12, 2015 and as of this writing, has not been retuned.

13. On December 30, 2015, the Court issued a Notice of Contemplated Dismissal.

14 On January 1, 2016, a copy of the Notice was mailed to the Defendant's agent for service CSC Corporation and as of this writing, has not been returned.

15. On January 31, 2016, Plaintiff filed a Motion for Default Judgment, serving the Defendant's General Counsel at 45 Glover Avenue, Norwalk, CT 06856.

16. On February 19, 2016, this Court issued an Order granting Plaintiff's Motion.

17. On February 21, 2017, a copy of the Court's Order was mailed to the Defendant's agent for service ,CSC Company and as of this writing, was not returned.

18. On March 3, 2016, Defendant, by counsel, filed a Motion to Vacate the Judgement, which this Court granted on June 24, 2016.

19. While this case was pending, the Defendant's agents began calling Defendant, in their attempts to collect the debt, in direct contravention of the State and Federal laws.

20. The records reflect that from December 18, 2014 through July 23, 2015, Defendant contacted the Plaintiff telephonically approximately 42 times. At its July 27, 2018, Deposition, Defendant's Corporate Designee testified that upon receipt of a Complaint to Discharge Student Loans, it is their practice to cease collections efforts. Moreover, Defendant's Corporate Designee testified that all of Defendants subsidiaries notices from their respective resident agents CSC Company are sent to the Defendant's Corporate Office.

21. Furthermore, the Plaintiff alleges that he informed the Defendant's agents of his Bankruptcy and that they informed him that it had been dismissed.

22. The records reflect that the Defendant received at least five (5) notices from the Court regarding these proceedings, which, as of this writing have never been returned to the court. Moreover, Plaintiff, by counsel, sent copies of all pleadings to the Defendant's Corporate General Counsel at the address of their corporation. The record does not reflect that any of those pleadings were returned.

23.     As a consequence, on July 11, 2016, Plaintiff filed a Third Amended Complaint ("TAC") and Jury Trial Prayer, wherein he alleges that the Defendant's violated The Automatic Stay, The Fair Debt Collections Practices Act and The Maryland Debt Collection Act, respectfully.

B. **Proposed Conclusions of Law**

23.     The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 362 and 28 U.S.C. §§157 and 1334.

24.     This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

25.     The filing of a bankruptcy petition operates immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate. See 11 U.S.C. § 362(a). This automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." S. Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. "It gives the debtor a breathing spell from his creditors" and "stops all collection efforts, all harassment, and all foreclosure actions." Id.

26.     To recover under § 362(k), a plaintiff must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation. See, e.g., <u>Garden v. Cent. Neb. Hous. Corp.</u>, 719 F.3d 899, 906 (8th Cir. 2013).

27.     The FDCPA regulates the conduct of "debt collectors," defined to include "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. § 1692a(6). Among other things, the FDCPA prohibits debt collectors from using "any false,

deceptive, or misleading representation or means in connection with the collection of any debt," and from using "unfair or unconscionable means to collect or attempt to collect any debt." Id. §§ 1692e-1692f. The statute provides a non-exhaustive list of conduct that is deceptive or unfair (e.g., falsely implying that the debt collector is affiliated with the United States, id. § 1692e(1)). Debt collectors who violate the FDCPA are liable for actual damages, statutory damages of up to $1,000, and attorney's fees and costs. See id. § 1692k(a).

28. Default status of a debt has no bearing on whether a person qualifies as a debt collector under the threshold definition set forth in 15 U.S.C. § 1692a(6). That determination is ordinarily based on whether a person collects debt on behalf of others or for its own account, the main exception being when the "principal purpose" of the person's business is to collect debt. The term "debt collector" means any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor [3] who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. 15 U.S.C. § 1692a(6).

29. The Maryland Consumer Debt Collection Act ("MCDCA") prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md.Code Ann., Com. Law §§ 14–201 to 14– 204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," id. § 14–201(b), may not "[c]laim, attempt, or threaten to enforce a right

5

with knowledge that the right does not exist." Id. § 14–202(8). See *Bradshaw v. Hilco Receivables, LLC,* 765 F. Supp. 2d 719, 731-32 (D. Md. 2011).

30. The Defendant is a debt collector as defined by the FDCPA and MCDCA.

31. The Defendant violated the stay, when according to Plaintiff, he provided with several verbal notifications of his Bankruptcy.

32. The Defendant received notice, by way of its Resident Agent for Service, which, according to Defendant's own testimony, sends all notices for all subsidiaries to the Corporate Legal Department of the Defendant. The Defendant took no action, whatsoever to respond to any of these notices.

33. Despite having been notified of the bankruptcy verbally by the Debtor, this Court and Debtor's counsel, the Defendant continued to communicate with the Plaintiff, telephonically, 42 times, in direct contradiction of the automatic stay and its own policies not to contact debtors who have filed Complaint's to determine dischargeability of its debt.

34. Defendant's action was willful.

35. Defendant's actions deprived the debtor his opportunity to have this Court determine if he were able to discharge his student loan debt.

36. As a direct result, the Plaintiff's loan is over $400,000, which is the amount of damages he has suffered as a result of the Defendant's willful conduct.

37. Defendant engaged in conduct to harass, oppress and abuse the Debtor.

38. Defendant's 42 calls were for collections purposes and violated the automatic stay, FDCPA and MCDPA.

39. Defendant violated the automatic stay for all calls made from December 8, 2014 through March 17, 2015.

40. Defendant made false representations of the character, amount, or legal status of the debt.

41. Defendant made false, deceptive or misleading misrepresentations or means in collecting the debt.

42. Defendant used false representation and deceptive means to collect or attempt to collect the debt or to obtain information concerning Debtor.

43. Defendant utilized unfair or unconscionable means to collect or attempt to collect the debt concerning the Debtor.

44. Defendant violated the FDCPA.

45. Plaintiff suffered damages communicate with the Plaintiff with such frequency to abuse or harass the Plaintiff under the FDCPA.

46. Defendant did in fact did claim, attempt, or threaten to enforce a right with knowledge that the right does not exist.

47. Defendant, by its own policies, were estopped from collection the Loan.

48. Defendant violated the Maryland Consumer Debt Collection Act ("MCDCA").

49. Plaintiff suffered damages under the MCDCA.

50. Plaintiff is entitled to recover his attorneys fees and cost.

51. Defendant's conduct was egregious and intentional conduct in violation of the automatic stay.

52. Defendant conduct is deserving of an award of punitive damages.

53. In so far as any conclusion of law should be deemed as a finding of fact, it is so classified.

Respectfully Submitted,

THE LAW OFFICES OF KIM PARKER, P.A.

/s/ Kim Parker /s/
_____
Kim Parker, Esquire  (Fed Bar 23894)
2123 Maryland Avenue
Baltimore, Maryland 21218
O:410-234-2621
F: 410-234-2612
E: kp@kimparkerlaw.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1ST day of August, 2018, a copy of the foregoing Proposed Findings and Conclusions of Law was served on all Counsel of Record via the Courts ECF Filing System.

/s/ Kim Parker/s/

_____

Kim Parker, Esquire

Counsel for Plaintiff