IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| **PARVIS NAFFIS AND VICKY NAFFIS**, <br><br> Debtors', | Chapter 7 <br> Case No.: **14-28711** |
| **PARVIS NAFFIS** <br><br> Plaintiff <br> vs. <br><br> **XEROX EDUCATION SERVICES, LLC, UNITED STATES DEPARTMENT OF EDUCATION and NELNET,** <br><br> Defendants, | Adversary Case No.: **15-00078** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

1

Parvis Narvis, ("Plaintiff"), by his undersigned counsel, submits his Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment.

## I. PRELIMINARY STATEMENT

"**Greed is the inventor of injustice as well as the current enforcer**".

*Julian Casablancas*

This is a case where the Plaintiff filed Bankruptcy to obtain a fresh-start[1]. The right to file bankruptcy is fundamental right afforded to the Plaintiff by the constitution. In this case, the Defendant's took advantage of unsuspecting debtor, in an effort to prevent a loss of over $400,000. As will be demonstrated *infra*, the Defendant received an abundance of notice, but, yet chose to continue their collection efforts in an attempt to coerce the debtor into consolidating his student loans, thus, depriving this court of an opportunity to rule on the merits of his complaint to discharge the student loans.

In fact, the Defendant employed a strategy of stratagem, *alleging*, that Plaintiff sued the incorrect party and that, allegedly, they never received notice of even this proceeding; however, magically, when this Court issued its finding of default[2], they appeared to defend this action. The Defendant's conduct as demonstrated *infra*, is the poster case for unfair and deceptive trade practices. This type of deceptive conduct has was outlined by the State of Massachusetts Office of Attorney General[3], who found that the Defendant failed to properly process struggling Massachusetts students' applications for federal repayment plans intended to lower their monthly payments and **[engaged in harassing debt collection practices],** amongst other violations of

---

[1] "The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991))
[2] See Record
[3] See http://www.mass.gov/ago/news-and-updates/press-releases/2016/ag-healey-secures-2-4-million-student-loan-servicer.html . This Court can take judicial notice pursuant to Fed. R. Civ. P. 201, 803(8)(a)(i), 901(b)(5).

state and federal law. Unfortunately, due to the greed of the Defendant and its cohorts, the Plaintiff has suffered victim to this unfair and deceptive trade practices.

## II. PROCEDURAL POSTURE

1. Plaintiff, Parvis Naffis, filed a voluntary petition under Title 7 of the Bankruptcy Code.

2. Defendant Xerox Education Services ("Xerox"), formally known as, Affiliated Computer Services Inc. ("ACS"), is a federally authorized student loan servicer, who serviced Plaintiff's student loan debt. Xerox and ACS, collected on Plaintiff's student loans and reported same to the credit reporting agencies.

3. At the time of the filing of the Bankruptcy, Plaintiff listed ACS/efsfin, as a Creditor, based on the information listed on his credit report. Moreover, Plaintiff listed the U.S. Department of Education, Defendants employer.

4. Plaintiff subsequently, on February 19, 2015, filed an Adversary Proceeding to determine the dischargeability of a student loan debt which is the subject of his Complaint.

5. On March 18, 2015, Plaintiff served a copy of the summons and complaint on the Defendant.

6. On April 30, 2015, Plaintiff filed a request for default. Plaintiff served the notice of default on the General Counsel for the Defendant at 45 Glover Avenue, Norwalk, CT 06856.

7. On May 5, 2015, the Clerk of the Court issued Default against the Defendant.

8. On May 7, 2015, a copy of the notice was mailed to the Defendant, via its agent for service CSC Corporation and as of this writing, has not been returned.

9. On May 8, 2015, Plaintiff filed a Motion for Default Judgement. Plaintiff served the Motion on the General Counsel for Defendant at 45 Glover Avenue, Norwalk, CT 06856.

10.    On June 25, 2015, this Court denied Plaintiff's Motion.

11.    On June 27, 2015, a copy of the denial was mailed by the Court to Defendant's agent for service CSC Corporation and as of this writing, has not been returned.

12.    On November 10, 2015, this court issued an instruction on Plaintiff's Motion for Hearing on Damages. A copy of the Court's instruction was mailed to the Defendant's agent for service CSC Corporation on November 12, 2015 and as of this writing, has not been retuned.

13.    On December 30, 2015, the Court issued a Notice of Contemplated Dismissal.

14    On January 1, 2016, a copy of the Notice was mailed to the Defendant's agent for service CSC Corporation and as of this writing, has not been returned.

15.    On January 31, 2016, Plaintiff filed a Motion for Default Judgment, serving the Defendant's General Counsel at 45 Glover Avenue, Norwalk, CT 06856.

16.    On February 19, 2016, this Court issued an Order granting Plaintiff's Motion.

17.    On February 21, 2017, a copy of the Court's Order was mailed to the Defendant's agent for service ,CSC Company and as of this writing, was not returned.

18.    On March 3, 2016, Defendant, by counsel, filed a Motion to Vacate the Judgement, which this Court granted on June 24, 2016.

### III. FACTUAL HISTORY

The Plaintiff obtained loans from the Defendants to finance his son's college education at various institutions of higher learning. At the time of the Bankruptcy, The Plaintiff is Seventy-Four (74) years old. (Affd.¶) The Plaintiff in March 31st, 2012 became severely ill and required a series of surgeries which resulted in the loss of approximately half of his intestines. (Affd.¶)  In March, 2013 Plaintiff, due to his health problems, was forced to close his business and was forced into retirement due to his health(Affd.¶).

Since March 31st, 2012, the Plaintiff was unable to work due to the permanent injury occasioned by his illness. (Affd.¶) Plaintiff has pervasive problems with breathing, walking, concentration, memory loss, absorption of nutrition which leads to general body fatigue and weakness. (Affd.¶) Plaintiff also suffers from heart disease (history of four by-pass surgeries); high blood pressure; hyperthyroidism; depressions and takes medication for each of these conditions. (Affd.¶) The sole income of the Plaintiff is Social Security Disability Income. The income of the Plaintiff is barely sufficient to meet his living expenses and is not sufficient to meet his living expenses and is not sufficient to pay and payment on the educational loans (Affd.¶).

Plaintiff has made a good faith effort to repay the educational loans but due to compounding of interest a debt that started at $72,000.00 due to interest charges grew to well over $300,000.00 (Affd.¶). Accordingly, Plaintiff was unable to maintain regular payments, and unable to make any payment at all now or in the future. His last payment on the debt was in 2002(Affd.¶).

At the time of the adversary, the amount due to the Defendants is in excess of $300,000.00 (Affd.¶). Based upon the current income of the Plaintiff, the current living expenses of the Plaintiff, and unlikely hood of future employment, the educational loans of the Defendants present an undue hardship upon the Plaintiff (Affd.¶).

Soon after filing for Bankruptcy, the Defendant's agents began calling Defendant, in their attempts to collect the debt, in direct contravention of the State and Federal laws (Affd.¶)

In fact, The Defendant called Plaintiff from December 18, 2014 through July 23, 2015, telephonically approximately 42 times (Affd.¶) Plaintiff spoke telephonically with the Defendant's agents, many times from December until July and informed them verbally that he

5

had filed for bankruptcy. The Defendant's agent did not ask for case information or for Plaintiff's counsel, they continued to call him (Affd.¶).

During a call, Defendant's agents informed Plaintiff that his Bankruptcy had been dismissed and that unless he agreed to consolidate his student loans, they would start garnishment proceedings (Affd.¶).

During the adversary proceeding, the Defendant received at least five (5) notices[4] from the Court regarding these proceedings, which, as of this writing have never been returned to the court.  Moreover, Plaintiff, by counsel, sent copies of all pleadings to the Defendant's Corporate General Counsel at the address of their corporation. The record does not reflect that any of those pleadings were returned.

## IV. <u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7056, governs the Motion for Summary Judgment. A moving party may be entitled to judgment as a matter of law under Civil Rule 56 in the absence of any genuine issue of material fact. Fed. R. Civ. P. 56. See <u>Emmett v. Johnson</u>, 532 F.3d 291, 297 (4th Cir. 2008) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986)). See also <u>Guessous v. Fairview Prop. Inv., LLC</u>, 828 F.3d 208, 216 (4th Cir. 2016) (discussing standards for summary judgment). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." <u>Emmet</u>t, 532 F.3d at 297. Courts generally will grant summary judgment "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." <u>Stanley Martin Cos. v. Universal Forest Prods. Schoffner LLC,</u> 396 F. Supp. 2d 606, 614 (D. Md. 2005) (citations omitted). A court must view the evidence on summary judgment in the light most

---

[4] See Record

favorable to the nonmoving party and "draw all justifiable inferences" in its favor, "including questions of credibility and of the weight to be accorded to particular evidence." <u>Masson v. New Yorker Magazine</u>, 501 U.S. 496, 520 (1991) (citations omitted). A court has some flexibility in the kinds of evidence that it can consider in resolving a motion for summary judgment. See, e.g., <u>Humphreys & Partners Architects,</u> 790 F.3d 532, 538–539 (4th Cir. 2015).

V.     ARGUMENT

I. **Voluntary Dismissal of Count II**

Plaintiff voluntarily dismisses Count II of the Third Amended Complaint.

II. **The Defendant is not entitled to Summary Judgment on Plaintiff's Fair Debt Collection Practices Act Count.**

1) **The Defendant is a Debt Collector As Defined by the FDCPA**

The Defendant argues that it is not a "debt collector" as defined by the FDCPA. To prevail on her FDCPA claims, Plaintiff must prove three elements: (1) he was the object of a collection activity arising from a consumer debt; (2) Defendants are debt collectors as defined by the FDCPA; and (3) Defendant engaged in an act or omission prohibited by the FDCPA. <u>Webster v. ACB Receivables Mgmt., Inc.</u>, 15 F.Supp.3d 619, 625 (D.Md. 2014).

The FDCPA defines "debt collector" as "any person [1] who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." Id. § 1692a(6). The *crux* of the Defendant's argument is that it is not a debt collector because the debt was not in default at the time it was obtained. The FDCPA regulates debt collectors who "**regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due another**." <u>Heinz v. Jenkins</u>, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. 1692a(6)). Section 1692a(6) provides in relevant part: "The term 'debt collector' means

7

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The Defendant relies on *Henson v. Santander Consumer USA, Inc*., 817 F.3d 131, 136, 138 (4th Cir. 2016), aff'd, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017) in support of their argument that the Defendant is not a debt collector. *Henson* is clearly distinguishable from the facts of this case. *Henson*, involved a purchaser of auto debts, which sought to collect debts for [i]tself, that it had previously [p]urchased. In its opinion, SCOTUS, specifically held that:

> "A company may collect debts that it [purchased] for its [**own account**], like Santander did here, without triggering the statutory definition in dispute. By defining debt collectors to include those who regularly seek to collect debts "owed . . . [**another**]," the statute's plain language seems to focus on third party collection agents regularly collecting for a [**debt owner**]—not on a debt owner seeking to collect debts for itself".

The Defendant's reading of *Henson* to mean that the foregoing is applicable to mortgage servicers, including student loan servicers, is clearly misplaced. In the instant case, there has been no allegation that the Defendant purchased that debt in question before it was in default. In fact, the Defendant admits that it is a servicer of the student loan, not an owner. Defendant is a debt collector under the FDCPA.

**III.     Plaintiff's Complaint has plead sufficient damages.**

The Defendant's final argument is that under the MDCPA, the Plaintiff is not entitled to attorney's fees and/ or punitive damages. Moreover, the Defendant argues that Plaintiff cannot recover his compensatory damages because the only damage he is seeking is the amount of the student loan. The Defendant argues that Plaintiff MDCPA claim fails, because, he, according to the Defendant is challenging the validity of the debt. The Defendant's argument is without merit. At the time the Defendant coerced the Plaintiff into consolidating his student loans, an adversary

complaint was pending to discharge, in whole, the debt owed to the Defendant. The damages directly arising out of the conduct of the defendant's are the amount of the debt that would have otherwise been discharged. At the time of the Plaintiff's bankruptcy filing he was indebted to the Defendant in the amount of $326,468. Exhibit A. Plaintiff's new loan balance is $368,816.86, with an estimated interest of $216,216.42. Exhibit B. Since plaintiff would have qualified for a hardship discharge, he would not have any debt, whatsoever. Plaintiff, therefore, would be entitled to $368,816.86, which is the amount directly attributable to the defendant's conduct under the MDCPA. Moreover, Plaintiff should also be entitled to any accrued interest and cost until a verdict has been reached in this case. Furthermore, Plaintiff is seeking $600,000 in compensatory damages for the defendant's violation under the MDCPA. These damages are actual damages and are directly related to the action herein stated. These damages are permissible under § 14-203.

Finally, Plaintiff will voluntary forgo his punitive damages and attorney's fees under the MDCPA only. Plaintiff will also forgo his request for punitive damages under the FDCPA.

### IV.   CONCLUSION

For the reasons stated above, Defendant's summary judgment motion must be denied.

    Respectfully Submitted,

    **THE LAW OFFICES OF KIM PARKER, PA**

    /s/ Kim Parker /s/
    _____
    KIM PARKER, ESQUIRE, BAR NO.: 23894
    2123 Maryland Avenue
    Baltimore, Maryland 21218
    Office: 410-234-2621
    Fax: 410-234-2612
    Email: kp@kimparkerlaw.com